**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| IN RE:<br><br>**SCRIBE MEDIA LLC,**<br><br>Debtor. | Case No. 23-10868-SMR<br><br>Chapter 7 |
| **RANDOLPH N. OSHEROW, CHAPTER 7 TRUSTEE,**<br><br>Plaintiff,<br><br>v.<br><br>**ZACH OBRONT,**<br><br>Defendant. | Adv. Pro. No. _____ |

**COMPLAINT FOR AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §§ 544, 548 & 550**

Plaintiff, Randolph N. Osherow, in his capacity as the Chapter 7 Trustee ("Trustee" or "Plaintiff") for Debtor Scribe Media LLC (the "Debtor"), by and through the undersigned counsel, hereby files this *Complaint for Avoidance and Recovery of Fraudulent Transfers Pursuant to 11 U.S.C. §§ 544, 548 & 550* (the "Complaint") against Defendant Zach Obront ("Defendant"). In support of this Complaint, Plaintiff would respectfully show the Court as follows:

**I.     INTRODUCTION**

1.     Plaintiff brings this action against Defendant to avoid and recover that certain fraudulent transfer that occurred during the two-year period prior to the commencement of

Debtor's bankruptcy case arising from the redemption of Defendant's ownership interest in the Debtor.

## II. PARTIES

2. Plaintiff Randolph N. Osherow was appointed as the chapter 7 trustee for the Debtor's bankruptcy estate (the "Estate") in the above-styled bankruptcy case ("Case" or "Bankruptcy Case") on October 16, 2023.

3. Defendant Zach Obront is an individual domiciled within, and a citizen of, the State of Texas and may be served with process at 1305 Kenwood Avenue, Austin, Texas 78704.

## III. JURISDICTION AND VENUE

4. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(a).

5. This proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(H), and the Bankruptcy Court may enter final orders for the matters contained herein.

6. Plaintiff affirms its consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

7. Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

8. This adversary proceeding is commenced pursuant to Rule 7001(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and 11 U.S.C. §§ 544, 548 and 550.

## IV. FACTUAL BACKGROUND

9. On October 16, 2023 (the "Petition Date"), Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code, thereby commencing the Bankruptcy Case.

10. Plaintiff Randolph N. Osherow was subsequently appointed as the Chapter 7 Trustee.

**A.  Debtor's Business**

11. Prior to the commencement of the Bankruptcy Case, the Debtor's business operations consisted of the production and publishing of high-quality books on behalf of Debtor's authors. Debtor's authors were typically executives, entrepreneurs or consultants seeking to build their personal brands. Debtor had published over 2,000 books since its founding, including 20 bestsellers.

12. Debtor's services were compensated on a flat fee basis, either with upfront payment or payment over installments of 12 months.

13. On the Petition Date, Debtor had active publishing contracts with more than 700 authors.

14. The Debtor's financial difficulties that led to the decision to file the voluntary petition are attributable to a combination of factors, including the Debtor's significant overhead expenses that placed significant stress on the Debtor's liquidity in the months leading up to the Petition Date.

15. Specifically, the Debtor's vast number of publishing contracts required a large staff and office space to fulfill its contractual obligations to its authors.

16. In early 2022, Debtor was operating at a loss, and the Debtor's cash flow situation started to become dire as Debtor's cash inflows were exceeded by its cash outflows.

17. As of December 31, 2022, just twelve days prior to the Transfer (as defined below), Debtor's balance sheet reflected Debtor's liabilities exceeded its assets. Specifically, Debtor's balance sheet reported liabilities of $5,178,995 and assets valued at $2,643,210. In addition,

3

Debtor's assets consisted of only $490,945 in cash. The balance of Debtor's assets consisted largely of $1,907,644 of intercompany accounts receivable (all of which were later determined to be uncollectable) and $241,525 in value attributed to an office expansion of leased space the Debtor would later reject as part of its Bankruptcy Case.

18. Aside from a weak balance sheet, the Debtor's operations consistently burned through cash throughout 2022, which ultimately precipitated in Debtor seeking bankruptcy relief in 2023. For the year ending December 31, 2022, the Debtor had a net loss of $3,873,497. In the months that would follow, the Debtor's operations would continue to operate at a loss month after month in an average amount of a $837,000 loss per month between January 1, 2023 and March 31, 2023.

19. For these reasons, the Debtor was insolvent on January 12, 2023.

**B.      Debtor's Ownership Structure Prior to the Transfer**

20. Debtor was incorporated in 2015 as a Delaware limited liability company.

21. Upon information and belief, Debtor was founded by Defendant and Tucker Max ("Max").

22. After founding the Debtor, Defendant and Max hired Jevon McCormick ("McCormick") to serve as Debtor's President and Chief Executive Officer.

23. At that time, the ownership interest in Debtor was as follows: (i) McCormick and Max each owned a 37.5% interest, and (ii) Defendant owned the remaining 25% interest.

24. More recently, the ownership structure in Debtor changed due to changes in the Debtor's business model. The Debtor's goal was to form several new subsidiaries for each of its new business lines.

25. On July 31, 2020, McCormick, Max, and Defendant formed JTM2 Holdings, LLC ("JTM2"), a Delaware limited liability company, to help fulfill the Debtor's goals and to serve as a holding company for Debtor and Debtor's affiliates.

26. Thereafter, McCormick, Max, and Defendant each contributed their respective shares of Debtor to JTM2 and, in exchange, received corresponding percentage of membership interest of JTM2.

27. Thus, as a result of the exchange, JTM2 owned 100% of the outstanding equity interest in Debtor, and McCormick, Max, and Defendant held the following ownership interest in JTM2: (i) McCormick and Max each owned a 37.5% interest, and (ii) Defendant owned the remaining 25% interest.

28. In or about January 2022, Defendant expressed a desire to pursue other business ventures, unrelated to the Debtor's business.

29. On January 1, 2022, Defendant exchanged his shares in JTM2 for ownership shares in Debtor.

30. As a result of this transaction, McCormick and Max collectively owned 100% of the interest in JTM2, and the ownership structure of Debtor was as follows: (i) JTM2 owned 73.48% interest; (ii) Defendant owned 24.49% interest; and (iii) Cam Herold, Jason Dorsey, and Evan Nisselson held a minority position in the aggregate of 2.03% interest.

**C.     The Share Redemption Transaction**

31. Effective January 11, 2023, Defendant and Debtor entered into that certain Share Redemption Agreement (the "Agreement") whereby Debtor agreed to redeem Defendant's ownership interest in Debtor comprised of 2,500,000 shares and, in exchange, Debtor agreed to

5

make the following payments to Defendant: (i) $900,000.00 on January 13, 2023, (ii) $900,000 on September 29, 2023, and (iii) $200,000.00 on June 28, 2024.

32. The Agreement indicates that, as a result of the transaction, the Debtor would acquire Obront's 2,500,000 shares in the Debtor.

33. On January 12, 2023, Defendant was paid $900,000.00 by JTM2 (the "Transfer") in accordance with Debtor's obligations under the Agreement.

34. Although the Transfer was made by JTM2, the Transfer was made on behalf and for the benefit of the Debtor.

35. As a result of the Transfer, the Debtor's and JTM2's internal accounting records reflected the Transfer as a payment made by and on behalf of Debtor and a loan obligation of approximately $3,000,000.00 due and owing from Debtor to JTM2 on account of, in part, the Transfer.

36. But for the Transfer being made, the funds transferred to Obront would have been property of Debtor's Estate.

### V. CAUSES OF ACTION

**A. Count I – Avoidance of Fraudulent Transfer Pursuant to 11 U.S.C. § 548(a)(1)(B).**

37. Plaintiff repeats and realleges each of the preceding paragraphs.

38. Plaintiff intends to avoid all transfers that may be avoided and recovered from Defendant under Chapter 5 of the Bankruptcy Code whether identified in this Complaint or which may be learned in the course of discovery.

39. The Transfer consisted of money in which the Debtor held a property interest.

40. The Transfer was made within the two (2) years prior to the Petition Date.

41. The Transfer was made to, or for the benefit of, the Defendant.

42. Debtor did not receive reasonably equivalent value in exchange for the Transfer.

43. The Debtor: (a) was insolvent on the date of the Transfer or became insolvent as a result of the Transfer, (b) engaged, or about to engage, in business or a transaction for which any property remaining with the Debtor or for whose benefit the Transfer was made was an unreasonably small capital at the time of, or as a result of, the Transfer, and/ or (c) intended to incur, or believed that they would incur, debts that would be beyond Debtor's ability to pay as such debts matured.

44. By reason of the foregoing, the Transfer should be avoided and set aside as a fraudulent transfer under section 548(a)(1)(B) of the Bankruptcy Code.

**B.    Count II – Avoidance of Fraudulent Transfer Pursuant to 11 U.S.C. §§ 544(b) and 550 and Tex. Bus. & Com. Code § 24.005(a)(2).**

45. Plaintiff repeats and realleges each of the preceding paragraphs.

46. Pursuant to section 544(b) of the Bankruptcy Code, a trustee may avoid, *inter alia*, any transfer of an interest of the debtor in property that is avoidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of the Bankruptcy Code.

47. The Transfer consisted of money in which the Debtor held a property interest.

48. The Transfer was made within two (2) years before the Petition Date.

49. Debtor did not receive reasonably equivalent value in exchange for the Transfer.

50. At the time the Transfer was made, the Debtor was engaged in business or was about to engage in a business or a transaction, for which the remaining assets of the Debtor were unreasonably small in relation to their business or transaction, or (b) intended to incur, or believed or reasonably should have believed that the Debtor would incur, debts beyond the Debtor's ability to pay as they became due within the meaning of Texas Business and Commerce Code § 24.005(a)(2).

51. At all relevant times, the Debtor had actual creditors holding unsecured claims allowable within the meaning of sections 502 and 544(b) of the Bankruptcy Code and section 24.002 of the Texas Business and Commerce Code.

52. The Transfer constitutes a fraudulent transfer which should be avoided pursuant to section 544(b) of the Bankruptcy Code and section 24.005 of the Texas Business and Commerce Code, and are recoverable pursuant to section 550 of the Bankruptcy Code.

C. **Count III – Preservation of Property Pursuant to 11 U.S.C. § 551.**

53. Plaintiff repeats and realleges each of the preceding paragraphs.

54. The Transfer is avoidable pursuant to sections 544 or 548 of the Bankruptcy Code, and is therefore property of the Plaintiff.

55. Thus, the Transfer, or the value thereof, should be preserved for the benefit of the Plaintiff pursuant to section 551 of the Bankruptcy Code.

D. **Count IV – Recovery of Avoided Transfer Pursuant to 11 U.S.C. § 550.**

56. Plaintiff repeats and realleges each of the preceding paragraphs.

57. Plaintiff is entitled to avoid the Transfer pursuant to section 548 of the Bankruptcy Code and/or section 544(b) of the Bankruptcy Code and section 24.005 of the Texas Business and Commerce Code.

58. Defendant was the initial transferee of the Transfer or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Transfer was made.

59. Pursuant to section 550(a) of the Bankruptcy Code, Plaintiff is entitled to recover from Defendant the Transfer, plus interest thereon to the date of payment the costs of this action.

E.  **Count V – Disallowance of All Claims Pursuant to 11 U.S.C. § 502(d) and (j).**

60. Plaintiff repeats and realleges each of the preceding paragraphs.

61. Defendant is a transferee of a transfer avoidable under 548 of the Bankruptcy Code, or section 544(b) of the Bankruptcy Code and section 24.005 of the Texas Business and Commerce Code, which property is recoverable under section 550 of the Bankruptcy Code.

62. Defendant has not paid the amount of the Transfer, or turned over such property, for which Defendant is liable under section 550 of the Bankruptcy Code.

63. Pursuant to section 502(d) of the Bankruptcy Code, any and all claims of Defendant, and/or its assignee, against the Estate or Plaintiff must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the amount of the Transfer, plus interest thereon and costs.

64. Pursuant to section 502(j) of the Bankruptcy Code, any and all claims of Defendant, and/or its assignee, against the Debtor's Estate or Plaintiff previously allowed by the Debtor or by Plaintiff, must be reconsidered and disallowed until such time as Defendant pays to Plaintiff an amount equal to the amount of the Transfer.

## VI. RELIEF REQUESTED

WHEREOFRE, for the foregoing reasons, Plaintiff respectfully requests that this Court enter judgment against Defendant as follows:

a) avoiding the Transfer pursuant to sections 544 and/or 548 of the Bankruptcy Code;

b) preserving the Transfer for the benefit of Plaintiff or the value thereof pursuant to section 551 of the Bankruptcy Code;

c) directing Defendant to pay to Plaintiff an amount to be determined at trial that is not less than $900,000.00, plus interest and costs, pursuant to section 550(a) of the Bankruptcy Code;

d)     awarding pre-judgment interest at the maximum legal rate running from the date of the Plaintiff's first demand to return the Transfer to the date of judgment with respect to this Complaint;

e)     awarding post-judgment interest at the maximum legal rate running from the date of entry of the judgment until the date the judgment is satisfied, plus costs; and

f)     granting Plaintiff such other and further relief as the Court deems just and proper.

Dated: April 1, 2024

Respectfully submitted,

HUSCH BLACKWELL LLP

*/s/ Lynn Hamilton Butler*
Lynn Hamilton Butler
State Bar No. 3527350
Lynn.Butler@huschblackwell.com
111 Congress Avenue, Suite 1400
Austin, Texas 78701
(512) 472-5456
(512) 479-1101 Facsimile

-AND-

Ryan A. Burgett
Tennessee Bar No. 33641
Ryan.Burgett@huschblackwell.com
736 Georgia Avenue, Suite 300
Chattanooga, Tennessee 37402
(423) 266-5500
(423) 266-5499 Facsimile

**SPECIAL LITIGATION COUNSEL FOR RANDOLPH N. OSHEROW, CHAPTER 7 TRUSTEE**